STEWART, J.
_JjAudio Plus, Inc., seeks review of the trial court’s involuntary dismissal of its action in contract against Sidney Patrick Lombardino, d/b/a SPL Corporation d/b/a Wild Orchid Cabaret. For the following reasons, the trial court’s judgment is affirmed.
FACTS
In December 2009, Audio Plus filed suit against Lombardino, alleging that he owed $5,543.54, plus interest and attorney fees, for services performed by Audio Plus and billed on open account. The services consisted of remodeling work done at the Wild Orchid Cabaret in Bossier City, Louisiana. Plaintiffs petition referenced an attached invoice indicating total work completed that, after credit and payments made, left the outstanding balance of $5,543.54.
On March 18, 2010, Lombardino filed an answer generally denying the allegations in plaintiffs petition, and further asserting compromise, lack of consideration, and work not completed in accordance with the agreement. Subsequently, on August 9, 2010, Lombardino amended his answer and added a reconventional demand against Audio Plus and against Komkrit Jim Chimpalee, an employee of Audio Plus, individually. Lombardino asserted that there was no open account agreement, but that the parties’ agreement was for installation of a sound, video and audio system, a television and other items in the Wild Orchid. According to Lombardino, Audio Plus and Chimpalee installed a 46" television, a 93" motorized screen, and a projector that were nonworking; they failed to finish the contract and left the job; and | 2Lombardino had to hire another contractor to finish the job for $6000 — the amount of Lombardino’s reconventional demand.
On December 28, 2010, Lombardino filed a second amended answer and reconven-tional demand making an additional allegation that Audio Plus and Chimpalee contracted to install a lighting system with materials, and that the lighting system was improperly installed. The new pleading also alleged that Audio Plus and Chimpa-lee had removed the 93" motorized screen and a nonworking projector, that they had *727 never returned those items, and that they were liable for the value of the items. Furthermore, Lombardino alleged that Audio Plus and Chimpalee were liable for the amount Lombardino paid to have the lighting system installed properly.
Audio Plus and Chimpalee responded on March 7, 2011, with an answer denying the allegations of the reconventional demands, and with an exception of no cause of action on behalf of Chimpalee based upon the argument that, as a mandatary contracting on behalf of a principal, Chimpalee did not bind himself personally.
The matter came on for trial on March 11, 2011. On cross-examination, Lombar-dino he testified that by verbal contract he authorized Audio Plus to do work up to, but not exceeding $5000, and that he paid $5000 prior to receiving any bills from Audio Plus. He also testified that he paid $4000 to repair work done by Chimpalee.
Nannette Chimpalee, the wife of Jim Chimpalee and secretary/treasurer of Audio Plus, testified as to the accuracy of the amount allegedly owed by Lombardino. She indicated that she prepared the bill that was introduced into | ¡¡evidence on behalf of Audio Plus, and that the bill was based upon log records from the employees. She also indicated that the bill, dated September 2, 2009, had been given to Lombardino on that date, prior to his making payments on September 19 and 30, 2009. Additionally she testified that Lom-bardino had not complained about the products or work.
Jim Chimpalee also testified to the accuracy of the amount allegedly owed by Lombardino. He denied ever having a conversation with Lombardino about a limit being placed on the work done, but testified to a continuing course of business with Lombardino. With respect to the projector and screen mentioned in the re-conventional demand, Chimpalee indicated that he still possessed the items, and that Lombardino could have them. He also stated that Lombardino had not complained about anything not working or about the bill being too high. Additionally, he testified that, instead of billing on accounts monthly, Audio Plus had, at that time, billed when a job or project was completed.
After Jim Chimpalee’s testimony, Audio Plus rested its case, and Lombardino moved for an involuntary dismissal. Following a brief recess, the trial court granted the involuntary dismissal, concluding there was no open account because there were no “interval payments and regular interval billing to classify this as an open account....” The court also concluded that the plaintiff had failed to carry its burden by a preponderance of the evidence. In this regard, the court initially stated:
There is no concise determination to be made regarding the outstanding balance as alleged by Audio Plus insomuch that there is no bid on the items prior to or signed off on by the defendant setting forth the amount that’s owed, or the work that will be performed, a L contractual agreement as to the hourly rate, or the material that will be used and because of that, that forces the — the Court to have a credibility call as to the recollection of the plaintiffs as to what work was performed, what amounts were received, how many dollars were outstanding.
When the plaintiffs attorney then asked for clarification regarding not making a prima facie case, the court stated:
My conclusion is, is that it’s unable for the Court to determine that any amounts are owed based upon the — the fact that there’s no contract in place setting, or bid contract, that’s setting *728 forth the — the work to be performed. There is a response, or affirmative defense, raised and testimony by the defendant that he agreed to $5,000 as a flat rate contract. There’s testimony by Mr. Chimpalee and Ms. Chimpalee on behalf of Audio Plus that that was not the agreement and that there was subsequent invoices that were dated July 15th of 2009 and June 2nd of 2009, setting out something totally different. There’s been no proof other than the testimony of Mr. testimony (sic) — I mean, Mr. Chimpalee that these items were placed on the premises of the — the defendant’s property along with the hourly work that was performed. And the Court’s having to make a credibility call based upon the testimony and recollection of the plaintiffs, as well as, the defendant and can find no, beyond a preponderance of the evidence, that — that there was not a — either a handshake agreement to do it for $5,000, or that there was a non-agreement for the sequential, or substantive work that was done, or alleged to be done by the plaintiffs in this matter.
After the involuntary dismissal of the plaintiffs case, the court took up the defendant’s reconventional demand. However, because the trial court ultimately rejected the reconventional demand for lack of sufficient evidence, and because the defendant has not appealed, no discussion is warranted in that regard.
DISCUSSION
Audio Plus presents three issues on appeal (verbatim):
1. Was this an open account and what constitutes prima facia (sic) evidence of an open account?
|s2. Were the Trial Court’s conclusions clearly wrong (manifestly erroneous)?
3. Was there a preponderance of evidence substantiating work performed on an open account, charges and credits?
We begin our analysis by noting that the trial court, in addition to finding no open account, found that Audio Plus failed to make a prima facie case that Lombardino owed money to Audio Plus. As discussed below, we find no manifest error in the trial court’s conclusion regarding failure of proof of a debt owed; thus, we pretermit discussion of the law regarding open accounts, other than to note that nothing peculiar to open account law would change the result in the absence of sufficient proof of the existence of a debt.
The trial court’s finding on proof, simply stated, was that conflicting evidence was presented through the testimony of the witnesses both as to the nature of the contract between the parties and the amount owed. In then making the required credibility call, the trial court found neither side more credible than the other; the trial court found neither side proved its case by a preponderance of the evidence.
A motion for involuntary dismissal at the close of the plaintiffs evidence is permissible after a bench trial when, based upon the facts and law, the plaintiff has failed to show a right to relief. La. C.C.P. art. 1672(B). When evaluating a motion for involuntary dismissal, the judge must consider all the evidence, without any special inferences in favor of the opponent of the motion, and grant the dismissal if the plaintiff has not established proof by a preponderance of the evidence. Barnes v. Barnes, 46,417 (La.App.2d Cir.6/22/11), 71 So.3d 1004. An involuntary dismissal under La. C.C.P. art. 1672(B) will not be reversed on appeal in the absence of manifest error; there is no manifest error if there is a reasonable factual basis for the finding of the trial court. Atkins v. City of *729 Shreveport, 45,665 (La.App.2d Cir. 9/22/10), 48 So.Bd 326. The trial court has great discretion in granting an involuntary dismissal. Brooks v. Minnieweather, 46,-900 (La.App.2d Cir.1/25/12), 86 So.3d 684; Barnes, supra, citing Chandler v. Chandler, 45,308 (La.App.2d Cir.5/19/10), 37 So.3d 569 and Smith v. Knight, 39,781 (La.App.2d Cir.6/29/05), 907 So.2d 831.
When there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Arabie v. CITGO Petroleum Corp., 2010-2605 (La.5/4/12), 89 So.3d 307; Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993). When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings; only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Considering the conflicting testimony of the witnesses in this case, and the great discretion to be afforded the credibility determinations of a trial court, we find no manifest error in the trial court’s decision to grant an involuntary dismissal of the plaintiffs case based upon a finding that no prima facie case was proved.
17Audio Plus also contends on appeal that Lombardino did not plead the affirmative defense of extinguishment, and that even if he did so plead, he failed to prove the defense. Our jurisprudence provides that even when an affirmative defense has not been pleaded by the defendant, if the plaintiff fails to object to the introduction of evidence that bears on the affirmative defense and that is not pertinent to any issues raised in the pleadings, the pleadings are considered to have been enlarged to include the affirmative defense, and the court can act as though the affirmative defense was pleaded. DLJ of Louisiana No. 1 v. Green Thumb, Inc., 376 So.2d 121 (La.1979). Thus, even if we assume, arguendo, that Lombardino in the case at bar failed to properly plead the affirmative defense of extinguishment, despite specifically pleading the affirmative defenses of lack of consideration and work not completed in accordance with the agreement, we conclude that Audio Plus’s failure to object to Lombardino’s testimony regarding the nature of the contract and payments made thereon would enlarge the pleadings to include extinguishment.
Furthermore, the purpose of La. C.C.P. art. 1005, requiring affirmative defenses to be specifically pleaded, is to prevent surprise by giving the plaintiff fair notice of the nature of the defense, thereby preventing interjection of unexpected issues. Bank of Coushatta v. Evans, 313 So.2d 644 (La.App.2d Cir.1975). In Lom-bardino’s pretrial memorandum, he specifically alleged that the agreement between him and Audio Plus was not to exceed services rendered in the amount of $5,000. Considering this allegation in conjunction with Lombardino’s pleadings, we 18observe that Audio Plus, at least in large measure, was put on notice of the nature of Lombar-dino’s defenses. As for proof, we note that Lombardino testified about payment made and work done, and the trial court apparently credited Lombardino’s testimony at least to the extent of neutralizing the plaintiffs evidence regarding any debt owed.
Finally, Audio Plus requests, in the alternative, that if this Court finds neither a contract, nor an open account, we consider unjust enrichment of Lombardi-no. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifica *730 tions or assignments of error, unless the interest of justice clearly requires otherwise. URCA 1-3. In this case, the issue of unjust enrichment was not submitted to the trial court, and we do not find that the interest of justice clearly requires consideration of that issue. Nevertheless, we note that this Court’s decision herein is not based upon findings concerning the existence or nonexistence of a contract or open account, but upon our finding of no manifest error in the trial court’s involuntary dismissal. That dismissal, in turn, was not based upon the lack of a contract of any kind between the parties, but upon the factual finding that Audio Plus had not presented sufficient proof that Lombardi-no owed any sum of money to Audio Plus. Unjust enrichment is a subsidiary remedy and is not available if the law provides another remedy. La. C.C. art. 2298. Audio Plus had a remedy in an action in contract; thus, the subsidiary remedy is not available. See Walters v. MedSouth Record Management, LLC, 2010-0353 (La.6/4/10), 38 So.3d 243.
^CONCLUSION
For the foregoing reasons, the trial court’s judgment is hereby affirmed at appellant’s cost.
AFFIRMED.